# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-01137-COA

PATRICK NEWELL A/K/A PATRICK        APPELLANT
LATRELLE NEWELL

v.

STATE OF MISSISSIPPI        APPELLEE

DATE OF JUDGMENT: 03/03/2020
TRIAL JUDGE: HON. DAL WILLIAMSON
COURT FROM WHICH APPEALED: JONES COUNTY CIRCUIT COURT,
FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER
BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY: ANTHONY J. BUCKLEY
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 09/21/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., McDONALD AND EMFINGER, JJ.

### EMFINGER, J., FOR THE COURT:

¶1. On November 27, 2017, a Jones County grand jury indicted Patrick Newell for possession of twenty-two grams of methamphetamine with intent to distribute and as a habitual offender pursuant to Mississippi Code Annotated sections 41-29-139 (Supp. 2016) and 99-19-81 (Rev. 2015). After a jury trial on March 2, 2020, Newell was found guilty and was sentenced as a habitual offender to thirty years in the custody of the Mississippi Department of Corrections (MDOC), with twenty-five years to serve and the remaining five years suspended on condition of the successful completion of five years of post-release

supervision. Newell was also ordered to pay a fine of $10,000 and court costs in the amount of $427.50, for a total of $10,427.50. On direct appeal, Newell contends that he received ineffective assistance of counsel. His contention is based upon his attorney's failure to pursue a motion to suppress evidence of what he claims to be the product of an illegal search and his attorney's failure to object to the admission of testimony regarding other alleged "bad acts." Newell seeks to have his conviction and sentence reversed and his case remanded for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶2. On January 13, 2017, Newell's Tahoe was stopped by Investigator James Stiglett on Highway 11 in the First Judicial District of Jones County, Mississippi, for speeding.[1] Once Newell was stopped, Stiglett checked his license and asked him to step out of the vehicle. Stiglett testified that Newell was breathing hard, sweating, and appeared nervous. At that point, Stiglett asked Newell if there was "anything" in the vehicle and requested his consent to search, which Newell refused. Within minutes, Lieutenant Robert Little and Investigator Jeff Monk arrived on the scene to assist Stiglett with the stop. Little testified that Newell was being evasive and otherwise acting nervous. Based upon Newell's behavior, his knowledge of Newell's prior history with narcotics, and information from a reliable confidential informant (CI), Stiglett left the scene to obtain a search warrant. Little testified

---

[1] Stiglett testified at trial that Newell was driving "up to forty-five" miles per hour in a thirty-five mile-per-hour zone.

that he allowed Newell and the passengers of the vehicle[2] to leave the scene upon their request; however, Little and Monk maintained custody of the vehicle until Stiglett obtained a search warrant. After the warrant was signed, the investigators searched Newell's vehicle and found sandwich bags, rolling papers, a bag of ammunition, a glasses case that contained methamphetamine,[3] a digital scale with methamphetamine residue, and glass pipes. Law enforcement later apprehended Newell at a local residence.

¶3. On January 17, 2017, Newell was interviewed by Patrol Sergeant Jared Lindsey. At trial and after a brief conference between both attorneys, a video of Lindsey's interview with Newell was admitted into evidence and published to the jury without objection from defense counsel. During the interview, Lindsey questioned Newell about the facts and circumstances surrounding the traffic stop and search on January 13, 2017. Additionally, Newell was questioned concerning his participation in or knowledge of other unsolved crimes and investigations.

¶4. Following his indictment on November 27, 2017, Newell's first attorney filed a motion in limine to suppress on July 12, 2018, which alleged that the evidence seized pursuant to the vehicle search should be excluded from evidence admitted at trial. This motion was never brought before the court for a ruling. Newell proceeded to trial on March 2, 2020, with a second attorney and was found guilty as charged in the indictment. On March

---

[2] Newell's wife and a small child were present in the vehicle at the time of the traffic stop.

[3] Keith McMahan from the Mississippi Forensic Laboratory in Meridian testified, as an expert, that the substance found was 21.98 grams of methamphetamine.

13, 2020, Newell filed a motion for judgment of acquittal notwithstanding the verdict or for a new trial, which was denied in an order entered on September 25, 2020. On October 14, 2020, Newell filed his notice of appeal. Newell also filed a pro se motion to quash his indictment and vacate the judgment on November 6, 2020. His motion to quash and vacate was denied in an order entered on November 6, 2020.

## ANALYSIS

¶5.     Newell's sole assertion on appeal is that he received ineffective assistance of counsel at trial. More specifically, he alleges that his counsel was ineffective for (1) failing to pursue a motion to suppress the introduction of evidence obtained during the search of his vehicle on January 13, 2017, and (2) failing to object to the testimony presented at trial regarding prior alleged "bad acts."

¶6.     In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established the standard for which an ineffective-assistance-of-counsel claim must be proved:

> First, the defendant must show that counsel's performance was deficient. This requires showing counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. **Unless a defendant makes both showings, it cannot be said that the conviction or a death sentence resulted from a breakdown in the adversary process** that renders the result unreliable.

(Emphasis added). In *Sandlin v. State*, 312 So. 3d 1191, 1197-98 (¶14) (Miss. Ct. App. 2020) *cert. denied*, 312 So. 3d 730 (Miss. 2021), this Court stated in part:

> Both prongs of the *Strickland* test must be proved or the claim of ineffective assistance of counsel fails. [*Strickland*, 466 U.S. at 687]. As to the first prong,

4

this Court has held that "the accused is not entitled to errorless counsel, and not counsel judged ineffective by hindsight. Each case is to be decided on the totality of the facts of the entire record." *Stringer v. State*, 454 So. 2d 468, 476 (Miss. 1984). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . ." *Id*. at 477. "Because of the difficulties inherent in making the evaluation, **a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance**; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Wilcher v. State*, 863 So. 2d 776, 796 (¶30) (Miss. 2003) (citing *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984)). In determining what falls into the category of trial strategy, this Court has held that "[c]ounsel's choice of **whether or not to file certain motions**, call certain witnesses, ask certain questions, **or make certain objections** falls within the ambit of trial strategy." *Hill v. State*, 850 So. 2d 223, 226 (¶14) (Miss. Ct. App. 2003) (citing *Scott v. State*, 742 So. 2d 1190 (¶14) (Miss. Ct. App. 1999)). Further, **"[a] strategic decision to pursue less than all plausible lines of defense will rarely, if ever, be deemed ineffective if counsel first adequately investigated the rejected alternative."** *Cole v. State*, 666 So. 2d 767, 776 (Miss. 1995) (quoting *Washington v. Strickland*, 693 F.2d 1243, 1253-54 (5th Cir. 1982)[negative history omitted)]). . . .

(Emphasis added).

¶7. In *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016)), the Mississippi Supreme Court said:

"[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Bell v. State*, 202 So. 3d 1239, 1242 (Miss. 2016) (internal quotation marks omitted) (quoting *Dartez v. State*, 177 So. 3d 420, 422-23 (Miss. 2015)). This Court will address such claims on direct appeal when "[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc.[,] are not needed." *Id*. (alterations in original) (internal quotation marks omitted) (quoting *Read v. State*, 430 So. 2d 832, 841 (Miss. 1983)). This Court has also resolved ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that the claims are without merit. *See, e.g.*, *Swinney v. State*, 241 So. 3d 599, 613 (Miss. 2018); *Ashford v. State*, 233 So. 3d 765, 779-81 (Miss.

2017); *see also* M.R.A.P. 22.

Because the State did not stipulate that the record is adequate in the case at hand, we must examine the record to determine whether it "affirmatively shows ineffectiveness of constitutional dimensions" or whether the record "affirmatively shows that the claims are without merit" before this Court will consider a *Strickland* analysis.

## I.   MOTION IN LIMINE TO SUPPRESS

¶8.   First, Newell alleges that his counsel was ineffective in failing to pursue a motion in limine that could have excluded incriminating evidence discovered when the officers searched his vehicle.  A motion in limine to suppress was filed on July 12, 2018, but was never brought before the court for a ruling.  There is no evidence in the record that any other written motion or motion made ore tenus attacking the admissibility of evidence seized during the search was ever brought before the court.  The sandwich bags (Exhibit 1), tobacco papers (Exhibit 2), bag of ammunition (Exhibit 3), sunglasses case (Exhibit 4), digital scales (Exhibit 5), glass pipes (Exhibit 6), and methamphetamine (Exhibit 7) were all admitted into evidence at trial without objection.  Because there was no hearing to determine whether the warrant was supported by probable cause, the record does not contain the officer's affidavit or underlying facts and circumstances he presented to the judge.  The record does not contain a copy of the executed search warrant allowing for the search of Newell's vehicle.

¶9.   In *Donerson v. State*, 812 So. 2d 1081, 1085 (¶7) (Miss. Ct. App. 2001), this Court stated that "when this court is reviewing a finding of probable cause by a lower court, we are not to review de novo whether there was probable cause or not, but our job is simply to

[e]nsure that there was a substantial basis for the magistrate's determination of probable cause." Because the record is not fully developed regarding Newell's ineffective-assistance-of-counsel claim related to counsel's failure to pursue suppression of the fruits of the search, this portion of his claim cannot be decided on direct appeal and must be raised in an appropriate post-conviction proceeding.

## II.    PRIOR "BAD ACTS" EVIDENCE

¶10.    Secondly, Newell argues that his counsel was ineffective in failing to object to testimony and evidence concerning alleged prior "bad acts."  More specifically, Newell argues that his video interview with Lindsey and Stiglett's and Little's trial testimony was "substantially more prejudicial than probative under Mississippi Rule of Evidence 403, and the admission of the evidence deprived [him] of his fundamental right to a fair trial."

¶11.    Mississippi Rule of Appellate Procedure 22(b) provides in part:

> Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.

The comment to Rule 22(b) further provides in part:

> Under this provision, issues such as claims of ineffective assistance of counsel for **failure to object to evidence** offered by the state or to argument by the state **must be raised on direct appeal**.  Other post-conviction issues which cannot be raised at the time of appeal because they involve actions or inactions outside the record are not waived since they cannot practically be raised without further development or investigation.

M.R.A.P. 22(b) cmt. (emphasis added).  All the alleged prejudicial testimony was included in the trial transcripts and Newell's video interview was played for the jury, introduced as

7

an exhibit at trial, and included in the record on appeal. Therefore, we find that the record is sufficient to consider Newell's ineffective-assistance-of-counsel claim on direct appeal pertaining to the admission of evidence of alleged prior "bad acts."

### A.    Video Interview

¶12.    Lindsey interviewed Newell on January 17, 2017. Lindsey testified at Newell's trial and the video interview was introduced into evidence as Exhibit 8 and played for the jury. Before the interview was played for the jury and after the judge asked Newell's counsel if there was any objection, Newell's attorney said, "[C]ould [I] just ask Ms. Martin a question about the disc?" After an "off-the-record" discussion noted in the trial transcript, Newell's counsel responded he had no objection. During the interview, Lindsey asked very few questions about the actual traffic stop and vehicle search that occurred on January 13, 2017. While the interview did elicit information about Newell's history with drugs, the vast majority of the interview was spent gleaning information about an apparently bigger target named "Mon." Lindsey asked questions about where "Mon" lived, a description of "Mon's" house, the quantity of drugs that "Mon" keeps on hand and sells, whether "Mon" deals guns, whether "Mon" had a vehicle, whether "Mon" ever used Newell's truck, and whether "Mon" was involved in a gang. Newell provided the information and answered Lindsey's questions. While Newell denied ownership of the methamphetamine and denied knowing the methamphetamine was in his vehicle, he admitted in the interview that his fingerprints may be on the bag of methamphetamine found in his car during the January 13th search. Newell also testified that "Mon" did not have a car and did borrow his car on occasion to get drugs

8

from other locations. Finally, Lindsey spent a significant amount of time asking Newell what information he could give them that would "knock their socks off" and assist them with a bigger drug or gun bust or unsolved murder case.

¶13. Newell's attorney relied on the information disclosed in Newell's interview to assert a defense in his closing argument. Counsel stated in part:

> You saw a video interview of Mr. Newell in which he said some pretty reprehensible things. . . . He didn't talk about having any drugs under the seat in his truck. In fact, he said – you heard officer Lindsey ask about "Mon." Who is "Mon"? We don't know. "Mon's" name never came up in this investigation except in that interview, but Mr. Newell said that "Mon" had driven his truck. That "Mon" was the drug dealer, and it was apparent from the interview that Officer Lindsey had some interest in "Mon." "Mon" was a big fish. They want to take "Mon" down. Well, Mr. Newell said that "Mon" would borrow his truck, leave be gone for seven or eight minutes and come right back. That he used his truck all the time. Can you say for sure that if that is the case and "Mon," this big bad drug dealer who Officer Lindsey wanted but we never heard about except in that interview, had used Mr. Newell's truck, could Mr. Newell have known that it was under his seat? Did he intentionally, purposefully possess what was found under the seat? And is it possible that "Mon" borrowed his truck, left it under the seat, and that's why Mr. Newell was so eager to walk away once the police started searching his vehicle? He didn't think he had anything to hide.

It is clear from counsel's closing argument that he relied on the contents of the video interview to present his defense. During the interview, Newell denied that the methamphetamine found belonged to him and said he did not know the drugs were in his vehicle. The defense attempted to create a reasonable doubt that the drugs belonged to Newell by showing that the methamphetamine could have been left in Newell's vehicle by the elusive "Mon." Further, when the court asked Newell's counsel if there was any objection to the video interview being entered into evidence, he requested a conference with

9

counsel opposite before answering the court's question. After an off-the-record discussion, Newell's counsel responded, "No objection, Your Honor." It can be inferred by counsel's request for a conference with counsel opposite that Newell's counsel made an informed and strategic decision to refrain from objecting to the admission of the video interview. The admission of Newell's interview placed his defense before the jury (that the drugs belonged to "Mon") without Newell having to testify at trial. The interview was replete with information regarding "Mon's" drug activity, which Newell relied upon in his defense. For those reasons, we find that Newell has failed to successfully satisfy the first prong of the test set forth in *Strickland* that his counsel's performance was deficient in failing to object to the admission of the video interview at trial.

### B.     Stiglett's and Little's Trial Testimony

¶14.    Stiglett and Little each testified at trial in behalf of the State. During direct and cross-examination, they both testified about a prior controlled sale where a CI purchased drugs from Newell out of the same vehicle that Newell was driving on January 13, 2017. This information was primarily elicited by defense counsel's questions to the officers, such as "Did you know that was Mr. Newell before you pulled him over?"; "What was your purpose for asking him to step out of his vehicle?"; and "What gave you probable cause to search his vehicle that day?" One of Newell's arguments at trial was that the January 13th traffic stop for speeding was pretextual and that in reality, Stiglett stopped Newell's vehicle because of the information recently received from a CI. It is clear from the trial transcript that it was counsel's objective to question the real purpose of the stop and search in an effort to cast

10

doubt on the reliability of the officers' testimonies. Arguably, counsel's failure to object to testimony concerning the alleged prior CI purchase from Newell and in eliciting such testimony during his examination of witnesses was part of his strategy to attack the officers' motive for the traffic stop and ultimately the vehicle search. For those reasons, we find that Newell has failed to successfully prove the first prong of the test set forth in *Strickland* that his counsel's performance was deficient in failing to object to and elicit testimony regarding alleged prior "bad acts."

¶15.    Finally, regardless of whether Newell successfully proved the first prong of the *Strickland* test, to prevail on his ineffective-assistance-of-counsel claim, Newell would also have to prove that the "deficient performance prejudiced [his] defense. This requires [a] showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Johns v. State*, 926 So. 2d 188, 194-95 (¶31) (Miss. 2006). In the case at hand, the officers testified that they found suspected drugs and drug-related items in Newell's vehicle, and those items were introduced into evidence at trial for the jury's review. Further, an expert from the Mississippi Forensics Laboratory testified that the substance in the glasses case retrieved from Newell's car was tested and found to be methamphetamine. In light of the physical evidence presented at trial, it is highly unlikely that the final outcome of the trial would have been any different despite counsel's performance.

## CONCLUSION

¶16.    After review, we find that the record is not adequate for this Court to address the portion of Newell's ineffective-assistance-of-counsel claim pertaining to counsel's failure

11

to pursue the motion in limine to suppress the evidence obtained from Newell's vehicle search. Therefore, that portion of Newell's claim is dismissed without prejudice so that he may raise it in a properly filed motion for post-conviction collateral relief if he so chooses. However, after reviewing the record as it pertains to Newell's claim resulting from counsel's failure to object to certain evidence and testimony concerning alleged prior "bad acts," we find the record sufficient for review of that claim. But we find that this argument has no merit, and therefore Newell's conviction and sentence are affirmed.

¶17. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**